UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

———

JAMES ERNEST MANNS, Jr.,

        Plaintiff,                          Case No. 1:07-cv-383

v.                                                  Honorable Wendell A. Miles

BARBARA SAMPSON et al.,

        Defendants.
                                              /

## REPORT AND RECOMMENDATION

This is a civil rights action brought by a state prisoner pursuant to 42 U.S.C. § 1983. The Court has granted Plaintiff leave to proceed *in forma pauperis*. Under the Prison Litigation Reform Act, PUB. L. NO. 104-134, 110 STAT. 1321 (1996), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A. The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, I recommend that Plaintiff's complaint be dismissed for failure to state a claim.

**Discussion**

I.        Factual allegations

Plaintiff is incarcerated in the Southern Michigan Correctional Facility. He pleaded guilty in the Genesee County Circuit Court to second-degree home invasion. On May 2, 2001, the trial court sentenced Plaintiff to imprisonment of three-and-a-half to fifteen years. Plaintiff's complaint concerns the revocation and continuation of his parole for a period of five years. Plaintiff sues Barbara Sampson, Chairperson of the Michigan Parole Board and the Parole Board Members Stephen DeBoer and James Quinlan.

On March 2, 2005, while Plaintiff was on parole status, he was arrested and charged with being a felon in possession of a firearm and possession of a firearm during the commission of a felony. The criminal charges ultimately were dropped, but the Michigan Parole Board commenced formal revocation proceedings against Plaintiff arising from the incident. Plaintiff was charged with (1) engaging in unlawful behavior - possessing a firearm on or about March 2, 2005 and (2) possessing a weapon on March 2, 2005. The revocation proceedings began in June 2005, but the revocation hearing was postponed in order to determine the whereabouts of a key witness. Plaintiff's revocation hearing concluded on January 17, 2007. On February 1, 2007, the parole board issued a decision revoking Plaintiff's parole and continuing his parole for a period of sixty months. (2/1/07 Parole Board Notice of Action, docket #1.)

Plaintiff claims that the decision of the hearing officer in the revocation proceedings was "erroneous, inaccurate and deliberately based on outright misrepresentations of the evidence as presented during the formal parole revocation hearing." (Compl., at 7-8, docket #1.) Plaintiff further claims that the sixty-month continuance of his parole violated his due process rights and

Michigan law. He claims that the parole board failed to conduct a parole interview as required by MICH. COMP. LAWS § 791.235(4). Plaintiff also asserts a violation of MICH. COMP. LAWS § 791.235(5), which provides that the parole board member conducting the interview shall not cast a vote for or against the prisoner's release before conducting the parole interview. Plaintiff claims that Defendant Quinlan voted to continue Plaintiff's parole on January 31, 2007, two days before the parole board issued its decision and without conducting a parole interview. Plaintiff also contends that the sixty-month continuance was excessive given the nature of the alleged parole violations.

Plaintiff seeks declaratory and injunctive relief. Among other things, he seeks a injunction prohibiting Defendants "from relying on any indication that [he] posessed a firearm and engaged in unlawful behavior involving a firearm for which he is currently incarcerated and denied parole." (Compl., 10.) He also seeks an order requiring Defendants to conduct an independent parole interview or to release him without an interview.

II.     Failure to state a claim

A complaint fails to state a claim upon which relief can be granted when it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations of the complaint. *Jones v. City of Carlisle*, 3 F.3d 945, 947 (6th Cir. 1993). To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

Plaintiff challenges the decision of the parole board revoking and continuing his parole for a period of sixty months. A challenge to the fact or duration of confinement should be brought as a petition for habeas corpus and is not the proper subject of a civil rights action brought pursuant to § 1983. *See Preiser v. Rodriguez*, 411 U.S. 475, 484, 494 (1973) (the essence of habeas corpus is an attack by a person in custody upon the legality of that custody and the traditional function of the writ is to secure release from illegal custody). The Supreme Court has held that a state prisoner cannot make a cognizable claim under § 1983 for an alleged unconstitutional conviction or for "harm caused by actions whose unlawfulness would render a conviction or sentence invalid" unless a prisoner shows that the conviction or sentence has been "reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus . . . ." *Heck v. Humphrey*, 512 U.S. 477, 486-87 (1994) (citation omitted). In *Wilkinson v. Dotson*, 544 U.S. 74, 81-82 (2005), the Supreme Court reiterated "that a state prisoner's § 1983 action is barred (absent prior invalidation) – no matter the relief sought (damages or equitable relief), no matter the target of the prisoner's suit (state conduct leading to conviction or internal prison proceedings) – if success in that action would necessarily demonstrate the invalidity of confinement or its duration."

Plaintiff's request for relief is somewhat ambiguous, but he seems to request a new parole hearing during which Defendants may not rely upon their erroneous findings from the revocation proceedings. As a consequence, under *Wilkinson*, success in this action would not necessarily demonstrate the invalidity of Plaintiff's continued confinement, so his action does not

appear to be *Heck*-barred. *See Wilkinson*, 544 U.S. at 82. Assuming that Plaintiff's action is cognizable under § 1983, it fails to state a claim as set forth herein.

Plaintiff first claims that the hearings officer's finding that he was in possession of a firearm on March 3, 2005, was "erroneous, inaccurate and deliberately based on outright misrepresentations of the evidence as presented during the formal parole revocation hearing." (Compl., at 7-8.) In *Morrissey v. Brewer*, 408 U.S. 471, 481-84 (1972), the Supreme Court held that individuals threatened with the revocation of their parole possess a liberty interest that entitles them to minimal due process protections. In defining those minimal due process protections, the Supreme Court recognized two important stages in the parole revocation process - the preliminary hearing and the revocation hearing. The Court stated that a preliminary hearing should be held promptly after the alleged parole violation or arrest to determine whether probable cause exists to hold the parolee for a revocation hearing. *Id.* at 485-87. If probable cause is found to exist, the parolee has a right to a hearing prior to a final decision on revocation by the state parole authority. The minimal due process requirements at the revocation hearing stage include:

> (a) written notice of the claimed violation of parole; (b) disclosure to the parolee of the evidence against him; (c) opportunity to be heard in person and to present witnesses and documentary evidence; (d) the right to confront and cross-examine adverse witnesses (unless the hearing officer specifically finds good cause for not allowing confrontation); (e) a 'neutral and detached hearing body' such as a traditional parole board, members of which need not be judicial officers or lawyers; and (f) a written statement by the factfinders as to the evidence relied on and reasons for revoking parole.

*Morrissey,* 408 U.S. at 489. The Court emphasized, however, that the second stage of parole revocation should not be equated with a full criminal prosecution. *Id.* The due process requirements for a revocation hearing defined in *Morrissey* are codified in MICH. COMP. LAWS § 791.240a.

Plaintiff maintains that he was denied a fair hearing because the hearing officer's decision was not supported by the evidence presented at the hearing. Because the revocation of parole is not part of a criminal prosecution, parolees are not entitled to the full panoply of rights given to defendants in criminal proceedings. *Morrissey*, 408 U.S. at 480. The process should be flexible enough to consider evidence that would not necessarily be admissible in adversary criminal proceedings, such as letters, affidavits, and hearsay testimony. *Id.* at 489; *United States v. Froman*, No. 86-5540, 1987 WL 36965, at *2-3 (6th Cir. Apr. 6, 1987). Unlike criminal proceedings, a parolee need not be found guilty beyond a reasonable doubt before having his parole revoked; rather, the revocation of parole is proper when supported merely by reasonable grounds. *See Morrissey*, 408 U.S. at 490; *Simmons v. Hurley*, No. 95-3168, 1997 WL 14781, at *2 (7th Cir. Jan. 9, 1997).

Following a written summary of the testimony presented at the hearing, the hearing officer made the following findings of fact:

> Around midnight on 3/01/05 the police were called to the scene of an accident. The driver of the accident vehicle was the parolee James Manns. It was a 2000 Dodge 4 door. The parolee was arrested on an FOC warrant. The car was impounded, and an inventory search was conducted on the scene. The police found a black bag that contained a .38 caliber handgun and ammunition. The bag also contained several items with the parolee's name and address on the[m] such as a parole check made payable to James Manns. There were also 15 white stickers in the bag containing Manns' prison number 282897. These items help to identify the items in the bag as belonging to the parolee. Parolee had called AAA road service and apparently the police were sent out to the scene. The parolee admitted that the black bag belonged to him. He had it returned to him by a friend [Phelon Hodge] on 01/31/05. The parolee said that the black bag was his from a while [sic] ago. He picked it up on 01/31/05. He testified that he never looked in the bag. He did not think anything illegal was in the bag. He and his girlfriend said the bag just remained in the trunk until the accident on 03/1/05. The testimony of the parolee's friend Dezi Layton and the parolee's agent conflicted with the parolee's version indicating that the black bag was picked up earlier in the day on 03/01/05. Parolee's assertion was that he never looked in the bag after it was returned to him and he did not know the gun was in his

> black bag. The hearings officer finds that the parolee's version is not credible. The natural thing to do when something is returned after a lengthy period of time is to look through the contents of the bag to determine what of value is in the bag. The parolee surely . . . [illegible text] . . . preponderance of the evidence that the parolee James Manns knowingly possessed the .38 caliber hand gun on 03/01/05 in the black bag in the trunk of the vehicle he had been operating. The hearings officer further finds that the evidence presented at the formal hearing provided a sufficient factual basis for the Hearing Examiner to find, by a preponderance of the evidence, that the parolee is IN VIOLATION of both counts #1 and #2.

(2/1/07 Parole Board Notice of Action, docket #1.)

Plaintiff disputes the hearings officer's findings of fact. He first claims that he never said at the hearing that the black duffel bag containing the gun "had previously been returned to him by a friend on January 31, 2005." Rather, his girlfriend testified that she first noticed the black bag in her car on January 31, 2005 and it sat in her trunk until the accident on March 1, 2005. Plaintiff also asserts that, contrary to the hearing officer's findings, there was no conflict between his testimony and that of Denzi Layton. According to Plaintiff, Layton testified that he accompanied Plaintiff to Hodge's residence on January 31, 2005, and that upon leaving the residence, Hodge was in possession of the black bag and put it in the trunk of Plaintiff's car. Hodge further testified that he never saw Plaintiff in possession of the bag and never saw Plaintiff in possession of a gun. Plaintiff contends that Hodge was the only person who could have possessed the firearm found in the duffel bag.

I disagree with Plaintiff's assessment of the evidence. There was more than sufficient evidence for the hearing officer to reasonably conclude that Plaintiff possessed the handgun found in the duffel bag. Plaintiff admitted that he owned the bag and does not dispute that numerous items found in the bag belonged to him. For example, the bag contained a parole check made payable to Plaintiff and fifteen white stickers with Plaintiff's prison number printed on them. The police officer who conducted the search also testified at the revocation hearing that he found some letters in the

bag addressed to Plaintiff and a prescription bottle with Plaintiff's name on it.  In addition, Plaintiff was the driver and only occupant of the car at the time the duffel bag was found and searched by police.  In light of this evidence, the hearings officer reasonably could conclude that Plaintiff was in possession of the gun.  Moreover, because the burden of proof is higher in a criminal proceeding, the fact that the criminal charges were dropped does not mean that there was insufficient evidence to sustain the parole violation charges.  *See Morrissey*, 408 U.S. at 490; *Simmons*, 1997 WL 14781, at *2.  Plaintiff, therefore, fails to state a due process claim arising from the revocation of his parole.

Plaintiff also claims that the sixty-month continuance of his parole following the revocation violated his due process rights and Michigan law.  Plaintiff claims that the parole board failed to conduct a separate parole interview as required by MICH. COMP. LAWS § 791.235(4).  Plaintiff also asserts a violation of MICH. COMP. LAWS § 791.235(5), which provides that the parole board member conducting the interview shall not cast a vote for or against the prisoner's release before conducted the parole interview.  Plaintiff claims that Defendant Quinlan voted to continue Plaintiff's parole on January 31, 2007, two days before the parole board issued its decision and without conducting a parole interview.  As discussed above, Plaintiff had a liberty interest in the revocation proceedings.  Plaintiff, however, had no liberty interest in being released on parole after his parole was revoked.  There is no constitutional or inherent right to be conditionally released before the expiration of a prison sentence.  *Greenholtz v. Inmates of Neb. Penal & Corr. Complex*, 442 U.S. 1, 7 (1979).  Although a state may establish a parole system, it has no duty to do so, and thus, the presence of a parole system by itself does not give rise to a constitutionally-protected liberty interest in parole release.  *Id.*; *Bd. of Pardons v. Allen*, 482 U.S. 369, 373 (1987).  Rather, a liberty interest is present only if state law entitles an inmate to release on parole.  *Inmates of Orient Corr. Inst. v. Ohio State Adult Parole Auth.*, 929 F.2d 233, 235 (6th Cir. 1991).

In *Sweeton v. Brown*, 27 F.3d 1162, 1164-65 (6th Cir. 1994) (en banc), the Sixth Circuit, noting "the broad powers of the Michigan authorities to deny parole," has held that the Michigan system does not create a liberty interest in parole. Subsequent to its 1994 decision, the Sixth Circuit has recognized the continuing validity of *Sweeton* and has continued to find that Michigan's parole scheme creates no liberty interest in being released on parole. *See Ward v. Stegall*, 93 F. App'x 805, 806 (6th Cir. 2004); *Martin v. Ohio Adult Parole Auth.*, 83 F. App'x 114, 155 (6th Cir. 2003); *Bullock v. McGinnis*, 5 F. App'x 340, 342 (6th Cir. 2001); *Turnboe v. Stegall*, No. 00-1182, 2000 WL 1679478, at *1 (6th Cir. Nov. 1, 2000); *Hawkins v. Abramajtys*, No. 99-1995, 2000 WL 1434695, at *2 (6th Cir. Sept. 19, 2000); *Irvin v. Mich. Parole Bd.*, No. 99-1817, 2000 WL 800029, at *2 (6th Cir. June 14, 2000); *Clifton v. Gach*, No. 98-2239, 1999 WL 1253069, at *1 (6th Cir. Dec. 17, 1999).

Also, in unpublished decisions, the Sixth Circuit has held that particular parts of Michigan's statutory parole scheme do not create a liberty interest in parole. *See Fifer v. Mich. Dep't of Corr.*, No. 96-2322, 1997 WL 681518, at *1 (6th Cir. Oct. 30, 1997); *Moran v. McGinnis*, No. 95-1330, 1996 WL 304344, at *2 (6th Cir. June 5, 1996); *Leaphart v. Gach*, No. 95-1639, 1995 WL 734480, at *2 (6th Cir. Dec. 11, 1995); *Vertin v. Gabry*, No. 94-2267, 1995 WL 613692, at *1 (6th Cir. Oct. 18, 1995); *Neff v. Johnson*, No. 92-1818, 1993 WL 11880, at *1 (6th Cir. Jan. 21, 1993); *Janiskee v. Mich. Dep't of Corr.*, No. 91-1103, 1991 WL 76181, at *1 (6th Cir. May 9, 1991); *Haynes v. Hudson*, No. 89-2006, 1990 WL 41025, at *1 (6th Cir. Apr. 10, 1990). Finally, the Michigan Supreme Court has recognized that there is no liberty interest in parole under the Michigan system. *Glover v. Mich. Parole Bd.*, 596 N.W.2d 598, 603-04 (Mich. 1999). Because Plaintiff has no liberty interest at stake, he fails to state a claim for a violation of his procedural due process rights.

Plaintiff also asserts violations of MICH. COMP. LAWS § 791.235(4)-(5). Section 1983 does not provide redress for a violation of a state law. *Pyles v. Raisor*, 60 F.3d 1211, 1215 (6th Cir. 1995); *Sweeton*, 27 F.3d at 1166. Consequently, a state's failure to comply with its own law, rule or regulation does not by itself state a claim under § 1983. *Smith v. Freland*, 954 F.2d 343, 347-48 (6th Cir. 1992); *Barber v. City of Salem*, 953 F.2d 232, 240 (6th Cir. 1992); *Spruytte v. Walters*, 753 F.2d 498, 508-09 (6th Cir. 1985). To the extent that Plaintiff's complaint presents allegations under state law, this Court declines to exercise jurisdiction. The Sixth Circuit has stated that district courts should generally decline to exercise supplemental jurisdiction over state law claims under these circumstances. *See Landefeld v. Marion Gen. Hosp., Inc.,* 994 F.2d 1178, 1182 (6th Cir. 1993); *Hawley v. Burke*, No. 97-1853, 1998 WL 384557, at *2 (6th Cir. June 18, 1998).

### **Recommended Disposition**

Having conducted the review now required by the Prison Litigation Reform Act, I recommend that Plaintiff's complaint be dismissed for failure to state a claim pursuant to 28 U.S.C. §§ 1915(e)(2), 1915A(b). Should this report and recommendation be adopted, the dismissal of this action will count as a strike for purposes of 28 U.S.C. § 1915(g).

I further recommend that the Court find no good-faith basis for appeal within the meaning of 28 U.S.C. § 1915(a)(3). *See McGore v. Wrigglesworth*, 114 F.3d 601, 611 (6th Cir. 1997).


Date:  September 13, 2007                             /s/ Ellen S. Carmody
                                                     ELLEN S. CARMODY
                                                     United States Magistrate Judge

## **NOTICE TO PARTIES**

Any objections to this Report and Recommendation must be filed and served within ten days of service of this notice on you. 28 U.S.C. § 636(b)(1)(C); FED. R. CIV. P. 72(b). All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b). Failure to file timely objections may constitute a waiver of any further right of appeal. *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *see Thomas v. Arn*, 474 U.S. 140 (1985).